May it please the Court, I'm Martha Sheehy and I represent the Colmore Defendants and Appellants and with me is Brad Luck from Missoula, Montana and he represents State Farm. Are you going to split the argument? We are not. We are copacetic on all of our arguments and we'll just go ahead and do it unless you have questions specific for State Farm. Okay. Today this Court is presented with two separate and distinct legal issues. The first is whether Royal had a duty to defend its insureds, the Colmores, during the penancy of the declaratory judgment action regarding coverage. The second is whether the workers' compensation exclusion in Royal's policy precluded the claims or precluded the coverage in this case. Before addressing Those seem to me kind of the same issue. That is to say if the workers' compensation provision in the policy excluded, they had no duty to defend. Under Montana law that's not true, Your Honor. Because? Because under Montana law the first question is whether or not the insurer has made an unequivocal demonstration that it has no duty to defend. Right. And in this case Royal did not make that demonstration. Royal equivocated to its insured and equivocated to the district court in the declaratory judgment action. And it didn't defend while it was bringing the declaratory judgment action. So the first question is was there a duty to defend not based on the workers' compensation exclusion, but based on this specific standard under Montana law, which is where is the unequivocal demonstration that coverage doesn't apply? So are you basically asking us to put ourselves back into the moment in time when all this occurred because of the fact that at the time you first tendered the Montana fund and the Montana Supreme Court had not then resolved the workers' coverage question? The Montana Supreme Court never determined the workers' compensation exclusion question. I understand that, but maybe I didn't make my question very clear. I think what you're arguing to us is that we have to go back to the point in time where the defense was tendered. Right. And at that point in time there was a question under Montana law as to whether or not the Comers had an obligation to the unemployment insurance fund and therefore whether this exclusion was even applicable. That's not exactly my argument. Okay. The Montana Supreme Court decision in Colmore came down in September of 2005. Royal had already filed this declaratory judgment action against its insured. If, as Royal now claims, the unequivocal demonstration that no coverage existed was that decision, Royal at that point should have withdrawn the declaratory judgment action and stood on its position that there is no coverage and therefore there's no duty to defend. When Royal went outside the pleadings and raised questions, whether about the workers' compensation exclusion or any other issue, and brought a suit against its own insured, Royal has a duty under Montana law to defend until the resolution of the questions it raised. Let me ask you this, and I may be off to one side of the argument you just made. At what point is Royal asked, either by State Farm or by your clients, to defend in relation to the time when the Montana Supreme Court says there's workers' comp coverage? There's a two-part answer to that. Let me preface it with the first part, which is the Forgey claim originated in 2002, and as the excess insurer, State Farm kept them informed throughout. But the actual duty to defend on the part of Royal occurred on October 19, 2005, which was a month after the Montana Supreme Court decision. Okay, that's the timing that I thought. So unless there's something I don't yet understand, and that's possible, about Montana law, that seems to me an easy case if the workers' comp exclusion in the policy excuses Royal from defending. Now, assume for purposes of the question that the workers' comp exclusion in Royal's policy does excuse them from either paying or defending. I understand that's a separate argument, and you're making that, but assume for the moment that once they learn from the Montana Supreme Court that this is a workers' comp case, they can then look at the workers' comp exclusion and they say, we're out of here. Right. But you've got an argument somehow that the fact that they've previously filed a declaratory judgment action makes that inoperative? No, it's not. What am I misunderstanding? It's the fact that they continued to raise questions. Continued after what point? After the point that they assumed the duty to defend, which is October 19th. Their policy became active on October 19th, 2005. I don't think they did assume the duty to defend. They said, we don't have the duty to defend. What I mean is, I'm sorry, when the duty to defend was triggered by the payment of the policy limits of the underlying policy, then the defense was triggered and the defense was tendered to them. So as of October 19th. At that point, they say no. Yes, they say no. And had they just said no and then said, we're relying on one thing and one thing only, this workers' compensation exclusion precludes coverage, insured, you're on your own. Make your own way. Then this would be a different case. But they didn't do that. They continued to litigate against their insured and they never made the unequivocal demonstration. They later determined, as the district court determined in 2007, that the workers' compensation exclusion precluded all coverage. Applying that back retroactively, all the facts existed, according to the district court, on October 19th, 2005. So that's a basis for denying coverage. But it's not the unequivocal demonstration that's required by Montana law. I want to back up here for a minute because I want to explain. Can I interrupt you? After October 19, when State Farm paid its policy limits, as I understand it, there was a series of letters exchanged. And at that point, Royal responded with a denial of coverage? No, Royal responded to the insureds, which is, we've got to get the basis down here, which is the insured has the duty of proving the exclusions.  However, Royal had the burden of establishing the exclusion applied. The exclusion for them not to defend has to apply unequivocally. There's no coverage as of October 19th. And under Montana law, there has to be an unequivocal demonstration. So when Royal has all the information that it has on October 19th, and that includes the Montana Supreme Court regarding workers' compensation, they need to communicate to their insured what their position is. And looking at the record, you'll see the letter that they wrote to their insured. It's in the excerpts of record, page 22 through 27. This is not an unequivocal demonstration that there's no coverage. They reserved their rights. Under Montana law, you're allowed to reserve your rights and defend under a reservation of rights while you file a DEC action. So you look at the letter that they wrote. They requested additional information on December 5. They stated that they were still investigating whether coverage applied. They stated that they were not even ready to decide whether there was a duty to defend. They were putting that off until they got more information from the insured. They were raising questions outside the pleadings. And for decades, the Montana Supreme Court has said, an insurer who raises questions outside the pleadings does so at its own risk. What's the risk? You defend until they're answered. Why is that? This is a perfect example. Rupert and Eunice Colmar purchased $5 million worth of insurance. They not only didn't get the coverage and didn't get a defense, they got sued. And throughout this lawsuit, you'll note in the pleadings that Royal was asking for costs and fees. They didn't get them in the judgment. But throughout this, the insured is not only subject to not having a defense and the underlying claim, not having coverage, they're being sued with the possibility of their assets being picked up for the costs and fees of the defense attorneys on the DEC action. Did you raise this issue before Judge Osby? Yes. And where in her order did she address this? She found, as I read her order, that there was no extension of the state farm policy beyond the $500,000 limit. That's right. And does she address this anywhere else in her order? Address the? The point that you're making about the fact that they reserved but had a duty to defend? She does not. And this is a very common. I want to tell you a little bit about the history of this evolution of Montana law on this duty to defend issue. For decades, the best practice has been, and all Montana attorneys advise their insurance companies, if you're going to file a DEC action, you must defend during the DEC action. Clearly, if you look back and look at all the duty to defend cases, there are very few where an insurer doesn't do both. You'll find one in 1990. It's a New Hampshire insurance versus Strecker. That's really the only one that explicitly said that they did that  So this was always the best practice in Montana. It became the law in Montana in 2004 in Staples. Because in Staples, the Montana Supreme Court said, Insurer, you have a choice. You may defend, reserve, and file a DEC action, or you may say no. I'm not going to defend, and you do that at your own risk. And if you look at the ten or so cases that have been decided by the Montana Supreme Court since 2004 in Staples, you'll see that that's exactly what's happened. The best practice has become the law. You'll see a bunch of cases where the insurer said, No, I'm not going to defend, to the insured. And then the insured brought the DEC action, and either won or lost. If the insured won, then the insurer is stopped from denying coverage. They basically have no defenses when you go back in. But in this case, they won. They won. They won, and State Farm continued defending their independency. So how were the Colmores harmed by what Royal did? The Colmores were harmed by what Royal did because they were subjected to four more years of litigation as a result of their wrongful refusal to defend while they sued the Colmores. Under Montana law, you can't have it both ways. Now, there is a counterbalance to these strict requirements. There's apparently a lot of collateral litigation that's still ongoing, including claims against the auger manufacturer. Yes. And is that the Colmores or the Forgys? That's resulting litigation from the settlement of the Forgy action. So they took the proceeds from that settlement and then went after the manufacturer of the auger? No, what happened is State Farm paid the freight. Oh, I understand, yeah. And then State Farm has, if the Colmores were to recover in this action, the other way, I have to add before I forget, the Colmores were harmed here because they also have a bad faith action that is dismissed automatically because they found no duty to defend. An action against Royal. Against Royal. Yeah. But meanwhile, there are other, I notified the court of the other litigation before the Montana Supreme Court because we have always maintained that the issue regarding the workers' compensation exclusion should go to the Montana Supreme Court on certification. Okay. But that question wasn't posed to the district court until after the district court ruled on summary judgment. That's not exactly true. That's what she said in her order. Well, this is the interesting thing that happened. And one of the reasons that that part of the record is confusing is that, I'm running out of time, is that we changed district court judges. This entire thing was brief. We've been going for three years. Judge Anderson retired. New judge comes in. She's sitting on these motions. The motion was my motion. It was a motion on the duty to defend. At the argument, and I put this in the excerpts, I think it's at excerpts 40 through 42, I have a colloquy with the judge where she says, well, I have to go to the workers' compensation exclusion. That solves the whole thing. And I said, oh, no, no, no, no, no. We haven't raised that. And, in fact, when we moved for summary judgment on the duty to defend, Royal, in response, said, we need more time to discover threshold factual issues, which, by the way, defeats their claim that there was an unequivocal demonstration. They're still doing discovery. And they said, we're going to file a motion for summary judgment on the issue of the workers' compensation exclusion at a later date. So we had not briefed it. So when they put that into their brief, I actually moved to strike any mention of the workers' compensation exclusion on the duty to defend because it wasn't relevant to the showing on the duty to defend, which is where's Royal's unequivocal demonstration of lack of coverage. They didn't make the unequivocal demonstration in their communication to the insured on December 5, and they didn't make the unequivocal demonstration to the court. Okay. But I'm not sure you answered my question. My question was simply, the district court was not asked to certify the question until after the adverse summary judgment order was entered. Not exactly because, as I said, she raised it sui sponte. I guess let me ask the question more directly. Did you have a pending motion to certify at the time Judge Osby took over the case? No. Okay. And when Judge Osby took over the case, not only was the workers' compensation exclusion not before the court, I moved to strike it when it became part of the court record. All right. At what point prior to the request that State Farm made after summary judgment was entered did you or State Farm request certification? We requested certification 10 days after they moved for summary judgment on the workers' compensation exclusion. This is the problem. Judge Osby conflated these two duties, the duty to defend and the duty to provide coverage on the workers' compensation exclusion. So she included the workers' compensation exclusion in response to our motion on the duty to defend. I had not raised it in that way. In fact, moved to strike it. It then became part of the record. They immediately moved for summary judgment on the workers' compensation exclusion, having already won by the fact that the judge had ordered it in this other order. Assume for the moment that we construe the policy and the workers' compensation exclusion to show, to say that there's no coverage. So the only question left is then duty to defend. As a practical matter, what are we talking about in terms of money, how long a period, and so on? The duty to defend is the counterbalance to not defending is that Royal no longer has really defenses. Royal is a stop from disputing coverage. You can't really decide the workers' compensation exclusion until you decide whether from October 19th through the pendency of the declaratory judgment action, Your position is if they had a duty to defend, they have a duty also to provide coverage, even if the policy doesn't provide coverage? You never get to the second question. That's very clear under Staples. In the Staples case, the Montana Supreme Court said, I don't know if you remember this, but it's a case about the ownership of the horse. And the Supreme Court, the insurer said, we think we know who owned the horse, and so we're denying coverage. And the Montana Supreme Court said, you might have been right when you resolved that fact, but we're not going to go there because you cannot go back and determine coverage if at the outset you didn't defend. If you don't defend and you were wrongful in your failure to defend, you don't get to go back and talk about coverage. And that's exactly what was wrong in this case, is that the court decided coverage, which is a legal basis. And down the road, Royal may have prevailed on that, but we don't think so under Montana law. But the really crucial question is, when will they be held to their burden of proof of showing an unequivocal demonstration that no coverage existed? They defeated that by asking questions. And for decades, the Montana Supreme Court has said, when you go out and ask questions that are outside of the scope of the policy, then you pay until those questions are resolved. And that's Montana law. That's the way it has developed over the years, and for a good reason. You can't ask the insureds to wait around for a defense while the insurance company satisfies its curiosity as to what tender of defense means. Okay. We got the argument. Let's hear it from the other side, and you'll get a chance to respond. Good afternoon, Your Honor. I'm Sampen on behalf of Royal and accompanied by Jonathan Decker on behalf of Royal as well. Has she accurately described Montana law? No. Your answer is no? The answer is not. She has not accurately described Montana law. And what's your description of Montana law? In Montana law, the fact issues raised outside the pleadings have to go to the question of coverage. And they have to be resolved in favor of the insured. And once they're resolved in favor of the insured, then you look to see if there's any unequivocal demonstration of non-coverage. And in this case, you can take all the fact issues you want that existed as of October 19, 2005. You resolve all those issues in favor of coverage, and you still come to the unequivocal demonstration of a lack of coverage based upon the workers' compensation exclusion. I would say what about the argument that says, well, you could have said, listen, look at that workers' compensation exclusion. You had the Montana Supreme Court decision right there in front of you. She's argument is, okay, if you wanted to say no, you had every piece of information right there in front of you. Why didn't you say no? We said no. Well, I read the letter. It doesn't quite say no. It says a lot of stuff. And you raised the question, but it doesn't say no. Maybe it's a matter of interpretation, Your Honor. That's a very long letter to say no. You can say no in a short letter. Well, that letter, Your Honor, it's at page 22 of the excerpts of record. I know. It's a December 5, 2005 letter. It raises various issues under the policy. One of the issues it raises is the workers' compensation exclusion. If you look at page 26 of the excerpts of record, it quotes the workers' compensation exclusion. It talks about the Montana Supreme Court decision, which demonstrated that Mr. Forgey was eligible for workers' compensation. Then the next sentence says, exclusion 17. And we're talking about the workers' compensation exclusion. Exclusion 17 abrogates coverage when this is the case. Exclusion 17 abrogates coverage. I don't know how much more unequivocal you can get than that. Well, how about the last page of the letter, the third to the last full paragraph? In order for us to evaluate whether the policy obligates royalty to defend any of the Coleman defendants at this time, we respectfully request that you, as soon as factually possible, advise us of 1, 2, 3. It doesn't sound like no. There were other issues, too. There were multiple issues, Your Honor. Let me ask you this. I'm not asking what that letter means at the moment. I'm asking for a description of Montana law as you understand it. Let's go to statement. No, I haven't asked the question yet. Okay. I'm sorry. I'm sorry. If when the request for defense has been tendered to you. Yes. And if at that point you don't say no. If at that point you say, I don't know. Maybe I have, maybe you're covered and maybe I'm not. Okay. You later determine that there's no coverage. At least that's what you think. Did you have a duty to defend from the time you said, I don't know, until the time you say, you know what? I really have no obligation under the policy. No, we did not. And we did not. That's a question of Montana law now. Yes. I'm not asking what you did. I'm asking whether or not on that hypothetical you had a duty to defend during that period. We did not. And what's your case that says that? The Staples case. The Staples case talks about. It seems to me as though you guys are reading the same case a little differently. I think we are, Your Honor. And that's probably part of the issue here. Under the Staples case, let me find it here. As long as there's an unequivocal demonstration of coverage based upon facts outside the underlying pleadings, there is no duty to defend. And the issue in the Staples case, what the insurance company did wrong in the Staples case was to make a factual finding on its own concerning the ownership of this horse which caused the automobile accident. And in the underlying complaint, the complaint alleged that the insured owned the horse. There were factual issues about whether the insured owned the horse. And the insurance company said, well, we're going to decide that the insured does not own the horse and therefore we have no duty to defend. And the Montana Supreme Court rightfully said that was wrong. You can't do that. But then the court goes on. It says it's okay to look at matters outside the underlying pleadings such as, in our case, the Montana Supreme Court decision with respect to workers' compensation. The court goes on. It talks about the unequivocal demonstration of non-coverage. And then it says, in other words, if there's any dispute as to the facts relevant to coverage, those factual disputes must be resolved in favor of coverage. Now, Michie has identified as the key date here October 19, 2005. Let's go what the facts were. Okay, but what facts beyond the Montana Supreme Court decision did you need on October 19, 2005? We didn't need any others. Then why did you include the language in the letter that says we have to continue doing factual discovery in order to decide whether or not the exclusion applies? Because at that time the Colmores were contesting every ground for non-coverage. We didn't raise these grounds for non-coverage for the first time in December of 2005. We raised them back in 2002. And we raised them again in 2004. And we raised them again after the Montana Supreme Court came out with its decision in September of 2005. We kept raising the same grounds over and over again. And they kept saying, oh, well, we think we disagree with you on this. We disagree with you on that. So we raised multiple grounds for non-coverage. Is it normal? I don't do much insurance law. We get these cases from time to time. But I confess I am not an expert in insurance law. Is it customary for insurance companies where there is a possibility that they will be on the hook for either duty to defend and or coverage to sue the insured? Oh, absolutely. I don't think I want to buy an insurance policy. As soon as the coverage comes up, they're going to sue me. The lawsuit is a declaratory judgment action. I understand that. To determine the rights. And case law all over the place says that it's very appropriate to determine coverage rights and obligations under an insurance policy. You get a declaratory judgment to declare the rights of the parties. I mean, there's a ton of case law that says that's a very appropriate thing to do. And, in fact, Staples itself says that that's the thing to do. What's your response to the argument, though, that while you're doing all that, you still have a duty to defend? You have a duty to defend if there are disputed fact issues. And if you resolve those fact issues in favor of coverage, if those presumptions in favor of coverage no longer demonstrate that there is an unequivocal showing of lack of coverage, and that's what happened in the Staples case. And the reason why our case is different from the Staples case is because you take whatever fact issues there were that existed in October of 2005, you resolve all those fact issues in favor of coverage, and you still come to the conclusion that there's an unequivocal showing, an unequivocal demonstration of lack of coverage based upon the worker's compensation, exclusion, and, in my view, based upon the lack of exhaustion as well. I can put the exhaustion issue aside for the moment. We'll talk about that later if we have time. But the fact of the matter is that as of October, if I can find my notes here, none of the facts in existence in October of 2005 undermined or negated the lack of application, or negated the application of the worker's compensation exclusion. It unquestionably applied then, and that's why I say that the State's case is different. But on December 5, you write this letter that has a whole lot of questions, and the second to the last full paragraph talks about the reservation of rights contained in this letter is based entirely on those facts that are known to us at this time and are made without prejudice. This letter does not say, no, we do not have any duty to defend. This letter says we've got a lot of possible defenses, and we're listing them here in this five-page letter. We might have some more we haven't even thought of yet, and we'd like some more facts from you guys. That's what the letter says. It says exclusion 17 abrogates coverage, and that's not the only thing we did then, Judge. We also filed an amended declaratory judgment complaint in December of 2005 as well. Well, it doesn't even say that. I'm on the second to the last page of your letter directing to the exclusion. You write, we next direct your attention to exclusion 17, which provides, and then you quote it, in its March 4, 2004 order, the Workers' Comp Court, as affirmed by the Montesquieu Supreme Court, made findings, exclusion 17 abrogates coverage when this is the case. Accordingly, Royal expressly reserves its right to disclaim coverage on the basis of exclusion. That is a reservation of right. That is not a denial of coverage. It's a denial of coverage in that we didn't defend. And our position at that time, our position before then, and our position in our amended complaint that we also filed in December of 2005 is that we had no obligation to defend the case, and that was the purpose of the declaratory judgment action. In our amended complaint, we also quoted from exclusion 17, the Workers' Compensation exclusion. And again, I could be educated on insurance law, although I will resist that. I don't blame you, Judge. Litigating as to whether or not you have an obligation to provide coverage is different from a flat statement by you that says we have no obligation. Staples doesn't say you have to have a flat statement. All Staples says is that you resolve the fact issues in favor of the insured. And if you resolve those fact issues in favor of the insured, and there is still an unequivocal demonstration of lack of coverage, you don't have an obligation to defend. And that's the point of Staples. And, you know, Michigan can say, well, gee, there were these fact issues, and it took the district court, you know, many months thereafter to decide those fact issues. I say, so what? That's the case in every situation. You present issues to the district court for decision, and it takes a while to resolve those issues. Staples talks about fact issues. Staples says you resolve fact issues in favor of coverage. Staples does not say resolve legal issues in favor of coverage. It's specific as to fact issues. And you look at the Ruby Immunichem case that we've cited in the brief. You look at the California Supreme Court. You look at the wint on insurance coverage disputes. They all say the same thing, that so long as the insurance company gives timely notice of its coverage position, and as long as it is correct in its interpretation of the policy, there is no duty to defend awaiting the outcome of the district court decision. Ms. Sheehy has cited no cases that contradict that view in her brief. And that's what the situation ñ there weren't any fact issues relevant to the unequivocal demonstration of lack of coverage here. There weren't any. You resolve all those issues in their favor, we still win as of October 19, 2005. And as I've indicated, we gave timely notice of our coverage position back in 2002. We gave timely notice of it in 2004. We gave timely notice again. And even with the knowledge of our position that the policy did not provide coverage, the Cormore's chose to continue the litigation anyway. Maybe it's funny. I don't know. I didn't think it was. But that's what happened here. I mean, Ms. Sheehy tries to put the burden on Royal. Why didn't you withdraw your declaratory judgment action? We couldn't withdraw it. They were litigating with us every step of the way. Their position in the district court was that we even had a duty to defend prior to exhaustion of the state foreign policy. Absolutely false. That was the length to which the Cormore's were going in the district court. I know I don't have much time left here. If I could just talk briefly about the workers' compensation exclusion, would that be appropriate, Your Honors? You've got one minute and 40 seconds. Okay. The workers' compensation exclusion is set forth in the record. Your Honors, know what it says. Basically what it says, I won't read it, is that if either Mr. or Mrs. Cormore had an obligation to provide workers' compensation, then the insurance coverage relating to the injury for which compensation is due is not applicable. The main argument of the Cormore's here on appeal is that Your Honors should apply the severability clause of the policy under the slant case to limit the scope of that exclusion. The severability argument has been rejected time and time again throughout the country. It's been rejected in California and in Washington and Missouri and New Jersey and in the other cases that we've cited here. And it's not, moreover, the position of the slant case. The slant case did refer to the severability clause, but what it relied upon was a differently worded set of exclusions. In the slant case, the exclusions involved in that case applied to you and to your. And those pronouns were specifically defined as the named insured, accompanied by the name of all purposes. I think we understand the slant case. Good enough, Jack. And your argument is, the way your exclusion is written is, if this is due to an injury to somebody who's covered under a worker's comp, we don't pay. End of story. Absolutely. I'm out of time. I have 10 seconds left if there's any questions. Once the light goes red, we keep counting, but now it's going up. I'm sorry. You're absolutely right. You are in debt to us by 20 seconds, but we'll forgive the debt. I don't want to get in further debt. With the reservation of right. Thank you, Judge. We'll give you some chance to respond. Thank you. I've cited two Montana cases. One's a federal case and one's the Montana Supreme Court case in Staples, which do establish that if you raise questions and bring the deck action, you have a duty to defend. In Staples, the Montana Supreme Court stated, if FUMIC wished to dispute coverage, it could have defended Staples under reservation of rights and later sought judicial determination through a declaratory judgment action to determine whether coverage existed. However, because FUMIC unjustifiably refused to defend, it's a stop from denying coverage. In Nielsen, Judge Malloy in Missoula interpreting the Staples case, interpreted Staples as providing that an insurer questioning coverage should file a declaratory judgment action and defend the insured. And as I stated, there are numerous Montana Supreme Court decisions which state, if you raise a question outside the pleadings, you have a duty to defend until it's resolved. I'm going to have to go back and read not only Staples but a whole bunch of stuff. But how do you respond to the argument that Staples is limited to a factual question as to who owned the horse, whereas here the duty to defend question, or I'll say the coverage question, isn't factual. The question is, okay, we now know from the Montana Supreme Court decision that workers' comp covers the decedent, and we now have the provision in the policy that we can read. There's no factual question here. So how do you respond to the argument that Staples just deals with facts? My response is that if this Court interprets Staples in the impermissible manner that Royal asked you to interpret it and limited to factual questions, we win. Why do we win? Because Royal raised factual issues. Royal responded to our motion for summary judgment on the duty to defend saying we need six months of discovery. We have threshold. Their word, not mine. Factual issues to discover. Relating to workers' compensation or other exclusions in the policy. Relating to tender and exhaustion. But if the workers' compensation exclusion had been, I'll call it, fully resolved in September 2005, then does it really matter that they were still conducting factual discovery on other exclusions that might have been applicable? Yes, it does, because Royal forced its insured into court to defend against these factual issues. The Cormors are in court defending. They're choosing the factual issues. And if you take their interpretation of Royal's interpretation of Staples, if you raise factual issues and they're resolved in favor of the insured, then the insured wins. Well, the factual issues they raised that they spent two years litigating with us, those were resolved in our favor. They just had this scattershot approach, and eventually the workers' compensation exclusion won. I'm still hung up, though, on the fact that State Farm was continuing to defend. It was not like the Cormors were left hanging out there. And Royal's letters are replete with references to the fact that we understand State Farm is defending and tell us if that situation changes. Now, the district court held, and it has not been appealed from, that State Farm owes no duty to Royal. Those are separate things. Right. I mean, that's between State Farm and Royal. Right. That's not before us. And that brings us to an important point. This should have been between State Farm and Royal, but they sued us. They cited the case of Reby to you, Traveler's Insurance case versus Reby, and I agree that that case is controlling. You know what they did in Traveler's Insurance Company versus Reby? They defended while they determined whether this very clear exclusion applied, and what did they do? They reserved their rights and said, we reserve the right to recoup our costs and fees incurred while we defend, and we're going to file a DEC action, notified the insured, demonstrated their position, and then they went into the DEC action, they prevailed, and they recouped all their costs and fees. So there was a remedy for them here. To what degree is State Farm segregated to any recovery that you might eventually get? To the fees that they have paid. Any proceeds, they have not, we didn't assign claims, we assigned proceeds. So State Farm has continued to defend, and they will be assigned any proceeds should we recover from Royal. They would be compensated for the amount they spent defending. But the Colmores retain their interest in the bad faith suit. So the bad faith part of it is that would still go to them, but except for that, those are the only two things we have here at issue is cost of defense to which State Farm is segregated and the possibility of a bad faith action. Those are the two things at issue. Yes. Okay. Do you want me to address the workers' compensation exclusion? I don't think so. It's pretty clear. Thank you. Okay. Thank you. Okay. Thank both sides. Royal indemnity versus Colmore and State Farm submitted for decision. Helpful argument by both sides. We are now in adjournment. As I think the phrase goes, sine die. Thank you all. Thank you. All rise.
judges: Fletcher, Gould, Tallman